25CA0050 Peo in Interest of Hall 03-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0050
Pueblo County District Court No. 24MH30125
Honorable Timothy O'Shea, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Tyler Jordan Hall,

Respondent-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE TOW
Dunn and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary E. Tezak, Florence, Colorado, for Respondent-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Tyler Jordan Hall appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate him involuntarily.  We affirm.

## I.     Background

¶ 2     The record indicates that before Hall's admission to the hospital in November 2024, he was a patient at the Colorado Mental Health Hospital in Fort Logan from November 2023 to March 2024.  There, his symptoms included agitation, hostility, and grandiose delusions; and he assaulted his treating physician and repeatedly hit himself on the head.  He was eventually stabilized on a combination of the antipsychotic medication olanzapine (Zyprexa) and the mood-stabilizing medication valproic acid (Depakote).

¶ 3     Eight months after Hall's discharge from the hospital in Fort Logan, he was admitted to the hospital in Pueblo after being found incompetent to proceed in a criminal case.  Upon his admission, he presented with impulsive behaviors, delusions, paranoia, and aggression.  Due to his escalating behaviors — which included saying that he was going to "start murdering nurses" — he was placed on emergency medications.

¶ 4    The People petitioned the district court to authorize the involuntary administration of Zyprexa, Depakote, and chlorpromazine (Thorazine).  However, at the hearing on the petition, the People, through the testimony of Hall's psychiatrist at the hospital, effectively amended their request by dropping the Thorazine and adding the antipsychotic medication ziprasidone (Geodon), which Hall had taken in the past.

¶ 5    At the hearing, Hall's psychiatrist, an expert in clinical psychiatry, testified that Hall's diagnosis was an unspecified mood disorder.  In discussing the medication change mentioned above, which was based on Hall's complaint that Zyprexa was causing a rash on his back, the psychiatrist testified that he was seeking to treat Hall with Geodon and Depakote as scheduled medications and Zyprexa as needed for episodes of acute agitation.  The psychiatrist explained that Geodon and Zyprexa can improve psychotic symptoms such as delusions and paranoia, and Depakote can improve symptoms of mania and prevent depressive episodes.

¶ 6    The psychiatrist testified that Hall had been successfully treated in the past with Geodon, Zyprexa, and Depakote, and, during this hospital stay, Hall had "significantly improved" on the

2

medications and was "on his way to returning to his baseline." The psychiatrist opined that, off the medications, Hall would be a danger to both himself and others at the hospital and would suffer a significant and likely long-term deterioration of his mental condition. But, according to the psychiatrist, Hall did not have any insight into his mental illness and did not want to take any medications.

¶ 7 During Hall's testimony, when asked whether he had a mental illness, he responded, "I don't." He also repeatedly testified that he did not need the medications and would not take them without a court order. In terms of medication side effects, Hall testified that when he previously took Zyprexa, he gained a lot of weight, had a fatty liver, and had bumps all over his back. He then added, "I think I got my liver back — I got my weight back. I worked out really hard, and I cut down food." He also testified that he did not like Depakote because it makes him tired and hungry all day long.

¶ 8 Following the testimony, the district court found that the psychiatrist had testified credibly and persuasively, and it expressly adopted the psychiatrist's opinions. The court then examined each of the four elements of the test from People v. Medina, 705 P.2d

3

961, 973 (Colo. 1985), concluded that all four elements were met, and granted the petition.

## II. Applicable Law and Standard of Review

¶ 9 Under the *Medina* test, a district court may authorize the involuntary administration of medication if the People demonstrate by clear and convincing evidence that (1) the person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the person's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the person in refusing treatment. Id.

¶ 10 Application of the Medina test involves mixed questions of fact and law. People v. Marquardt, 2016 CO 4, ¶ 8. We defer to the district court's factual findings if they have record support, while we review the court's legal conclusions de novo. Id. Resolving conflicts in testimony and determining the credibility of the witnesses are

solely within the province of the district court. People in Interest of Ramsey, 2023 COA 95, ¶ 23.

¶ 11     We must affirm the district court's ruling if the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the court's order. People in Interest of R.K.L., 2016 COA 84, ¶ 13. The testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the *Medina* test. *Id.* at ¶ 30.

### III. Analysis

¶ 12     Hall concedes that the first, second, and third elements of the *Medina* test were met. However, he challenges the sufficiency of the evidence supporting the fourth Medina element — that his need for treatment was sufficiently compelling to override any bona fide and legitimate interest he had in refusing treatment.

¶ 13     Hall first argues that his interest in avoiding side effects from the medications was bona fide and legitimate. He then argues that, because the district court did not sufficiently acknowledge that interest, it could not properly balance it against the State's interest in medicating him.

¶ 14    The district court noted that, though Hall vaguely identified a religious basis for resisting medications, these views were undeveloped and unsupported by the evidence. Noting Hall's repeated assertion that he does not need the medications, the court concluded that "he just has a general preference to not take medications." However, the court never actually considered whether Hall's stated concerns about side effects were bona fide and legitimate. This was error — but not reversible error.

¶ 15    This is because the court went on to balance Hall's interest in not taking the medications and the State's interest in administering them. The court found that, even if Hall's interest in not taking the medications was bona fide and legitimate, his need for the medications was sufficiently compelling to override that interest. In other words, though the court erred when it did not assess the sincerity of Hall's claim that he wished to avoid the side effects of the medications, it abrogated the effect of that error when it treated Hall's concerns as legitimate during the next step of the analysis.

¶ 16    We agree with the district court's determination. Even if Hall had legitimate concerns that the medications had certain side effects, the psychiatrist's and Hall's testimony called into question

6

the significance of those side effects. In terms of Hall's concern regarding developing a fatty liver, the psychiatrist testified that Hall's liver functioning was being monitored through lab work; and if Hall were to develop any liver issues, his medications would be adjusted accordingly. In terms of Hall's weight, when he was asked at the hearing whether he had gained any weight since this admission to the hospital, he responded only, "I've been walking around a lot." Further, the psychiatrist testified that the bumps on Hall's back were "more consistent [with] acne," and that he has not seen any specific cases where these medications caused acne in a patient. And finally, in terms of Hall's sedation, the psychiatrist confirmed that Hall "may be more sedated than if he were not taking the medications," but it was not a severe side effect that affects his daily functioning. The psychiatrist also testified that the sedation might improve the longer that Hall is on the medications.

¶ 17    More importantly, though, the psychiatrist's testimony regarding the severity of Hall's symptoms, behavior, and prognosis without the medications, which the district court credited, provides ample support for the court's determination that Hall's desire to refrain from taking these medications "must yield to the legitimate

7

interest the State has in preserving his life and health and protecting the safety of those in the institution."  We thus discern no basis for reversal.  See *Marquardt,* ¶ 8; *Ramsey,* ¶ 23; *R.K.L.,* ¶¶ 13, 30.

## IV.   Disposition

¶ 18     The order is affirmed.

JUDGE DUNN and JUSTICE MARTINEZ concur.